SOREN PETERSON ET AL., APPELLEES, V. SCHOOL DISTRICT NO. 91, HAMILTON COUNTY, ET AL., APPELLANTS.

.FILED FEBRUARY 14, 1933. No. 28627.

*Prince & Prince,* for appellants.

*Craft, Edgerton & Fraizer, Allen & Requartte* and *Charles L. Whitney, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY and PAINE, JJ., and RAPER, District Judge.

RAPER, District Judge.

School District No. 91 of Hamilton county was organized many years prior to the year 1912, it embracing the village of Hampton, and maintained a high school. On May 7, 1912, the county board, the county clerk, and county superintendent took certain lands belonging to plaintiffs and interveners from school districts Nos. 8, 40, and 48, and incorporated them within the limits of School District No. 91, and ever since said date School District No. 91 has exercised taxing jurisdiction over such lands, and has levied and collected a large amount of school taxes therefrom. The action of said officers in adding to district No. 91 the lands of the plaintiffs and interveners was taken under the provisions of section 79-130, Comp. St. 1929, which the court in the case of *Ruwe v. School District,* 120 Neb. 668, held to be unconstitutional. Ever since 1912 the plaintiffs and interveners have paid their school taxes to district No. 91, and most of them have participated in the annual school meetings; some have held office in district No. 91; their children attended school, some of the pupils finishing the high school courses, and no tuition has been paid for any of said pupils, and generally these complaining landowners and district 91 conducted themselves in their mutual relation as if there was no question or doubt as to the legality of the right of district No. 91 to have these lands made part of that district, nor was attempt made before the institution of these suits to have the order of May 7, 1912, set aside or abrogated.

In April, 1932, there were two actions begun by different plaintiffs, and some others intervened, which actions were by agreement consolidated and tried together. These plaintiffs and interveners were owners of the lands that had been taken from districts Nos. 8, 40, and 48 and added to district No. 91. These landowners allege that the acts of the county officers on May 7, 1912, were void, because the law under which they acted was unconstitutional, and that their lands never were in fact a part of district No. 91, and they pray for an injunction against district No. 91, and the officers of the county whose duty it is to levy and collect school taxes, restraining district No. 91 from exercising any jurisdiction over the lands of plaintiffs and interveners, and from levying or collecting any school taxes for district No. 91, and they also allege that district No. 91 has levied and received taxes largely in excess of what the district to which they claim they properly belonged would have required them to pay, and they ask for an accounting of these excessive taxes and pray for judgment against district No. 91 for such amounts so found.

School District No. 91, in its answer, in so far as necessary to state, conceding that the law under which the lands in question were added to its territory was unconstitutional and void, alleges that the plaintiffs and interveners knew at all times that said changes had been made; that they made no objection thereto for 20 years; that they had educated their children in district 91, had paid taxes to said district for 20 years without protest; that some were for years officers of the district; that they acquiesced in such proceedings during all said time, voted to levy taxes in said district; and claims that plaintiffs and interveners are barred by the statute of limitations, and were guilty of such laches and negligence as to bar any recovery; and as to claim for recovery of taxes, no objection had been made to the taxation of their property; that said taxes were not paid under protest, nor had any demand been made for such taxes, and their claim is barred by statute of limitations.

The county board and county clerk, who were made parties, answered by general denial.

The trial court granted the plaintiffs and interveners a perpetual injunction restraining district No. 91 and the county officers from exercising school and taxing jurisdiction over these lands. The court refused the claim of plaintiffs and interveners for an accounting, and denied the request for judgment for taxes that had been paid. School District 91 appeals from the decree awarding the injunction, and the plaintiffs and intervener appeal from the order denying their claim for the taxes paid.

The plaintiffs and interveners claim they were laboring under a mistake of fact when they paid their taxes, and were misled because they were relying upon the legality of the legislative act when their property was added to district 91, and that they began their action promptly after this court held the law unconstitutional in *Ruwe v. School District,* 120 Neb. 668. That was not a reliance upon a mistake of fact but on a question of law. They knew that their lands had been transferred from other districts to district No. 91. On the legal phase of the matter, the courts were open to adjudicate their rights at all times.

School District No. 91 pleads estoppel, acquiescence, ratification, and laches.

The decisive principle here involved is whether under the facts the plaintiffs and interveners are estopped by their actions and 20 years' delay in attempting to now assert a right which they might have obtained at the time of the transaction. The principle thus invoked has been passed on by many courts, and whether it is called ratification, or laches, or estoppel by acquiescence, has been given rather wide application; probably most of the cases refer to questions arising in municipal corporations, but the principle has also been frequently applied to school districts.

"Acquiescence, especially if long continued, will ordinarily estop one from attacking the validity of proceedings

for transferring his property to or including it in a school district or other local school organization." 56 C. J. 252.

"Taxpayers or inhabitants may be estopped to question the validity of the annexation or detachment of territory to or from a municipal corporation as by long continued acquiescence in the annexation, or by failure to exercise the rights of * * * appeal given them by statute. So, also, a municipality may be estopped." 43 C. J. 138, and cases cited.

The question is not a new one in this state. In *Sage v. City of Plattsmouth,* 48 Neb. 558, opinion by Commissioner Irvine, where there was seven years' delay in bringing the action, it was held that landowner could not maintain action to restrain collection of city taxes on the grounds that land had been illegally taken into the city, where he had paid taxes during all that period. In that case the owner had not received any benefits from the city. In *State v. Several Parcels of Land,* 80 Neb. 11, (on rehearing vacating the opinion of that case in 78 Neb. 703) Judge Letton, while not basing his conclusion entirely upon the doctrine of laches, in his opinion says: "Further, the defendant is plainly guilty of laches. He paid the city taxes from 1888 to 1894, inclusive, and has taken no steps to question the validity of the incorporation, though the ordinance was passed 19 years ago. If the defendant desired to contest the validity of the annexation of his property to the city, he should have done so long ago. *Strosser v. City of Fort Wayne,* 100 Ind. 443." And in paragraph 3 of the syllabus, the court announces: "Nor can the validity of the annexation proceedings be tested in such a suit, where the evidence shows acquiescence in the proceedings and the payment of taxes levied by the corporation for several years." That was a proceeding to prevent the city from collecting taxes, and it appears that the property taxed had never in fact received any benefits from the city.

A case almost directly in point is *School District v. School District,* 81 Mich. 339, in which the Michigan court

lays down the rule that the acquiescence of a school district for six years in the action of the joint board of school inspectors detaching a part of its territory and attaching it to defendant district estops the former from claiming either the territory itself or taxes collected thereon during those years. See, also, *State v. City of Pierre,* 15 S. Dak. 559; *State v. McLean County,* 11 N. Dak. 356; *State v. City of Des Moines,* 96 Ia. 521.

The plaintiffs cite the case of *Chicago, B. & Q. R. Co. v. Cass County,* 51 Neb. 369. In that case the railroad company had listed and paid taxes upon certain property for several years to the school district before 1895, then began an action to restrain the collection of the tax for 1895 on the ground that the property was not, nor ever had been, either legally or illegally in the district. The court found that the property never had been included in the boundaries of the district, and that the district had no right to levy tax thereon, and that prior payment of taxes did not estop the plaintiff from maintaining the action after discovery of the fact. Other cases of similar import are cited. There is a clear distinction in those cases from the case at bar. In those cases the wrongful assessments were made on property that was not within the limits of the district.

Under the situation and facts shown herein, we hold that the laches, acquiescence, and participation of these landowners for 20 years estop them from now claiming the relief prayed for.

This holding necessarily disposes of all the other issues raised.

The decree of the district court is reversed, in so far as it grants the injunction against School District No. 91 and places the lands in question in their original districts; and the decree denying claimants their prayer for taxes paid is confirmed. The cause is remanded to the district court, with directions to dismiss plaintiffs' and interveners' petition at their cost.

AFFIRMED IN PART, AND REVERSED IN PART,
AND REMANDED, WITH DIRECTIONS.