LORIN R. SUMMERVILLE, APPELLEE, v. NORTH PLATTE VALLEY WEATHER CONTROL DISTRICT, A CORPORATION, ET AL., APPELLANTS.

LORIN R. SUMMERVILLE, APPELLEE, v. P. COOPER ELLIS, COUNTY TREASURER OF SCOTTS BLUFF COUNTY, APPELLEE, NORTH PLATTE VALLEY WEATHER CONTROL DISTRICT, A CORPORATION, INTERVENER-APPELLANT.

101 N. W. 2d 748

Filed March 11, 1960. No. 34721.

*Marvin L. Holscher* and *Jack E. Lyman,* for appellants.

*Atkins & Ferguson, Clark G. Nichols, W. H. Kirwin,* and *Straight Townsend,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The plaintiff, Lorin R. Summerville, filed a petition in the district court for Scotts Bluff County against the North Platte Valley Weather Control District, a corporation, hereinafter referred to as the district, Dave Dillman, George Sato, Harry Webber, Evert Thomas, Henry Sands, Benjamin F. Roberts, Jr., Frank E. Berquist, Jerry Hays, C. C. Hendrickson, and P. Cooper Ellis, defendants, praying for judgment determining and declaring L. B. 539 enacted into law by the Sixty-eighth Session of the Nebraska Legislature in 1957, now sections 2-2410 to 2-2427, R. S. Supp., 1957, to be unconsti-

tutional, and restraining P. Cooper Ellis, county treasurer of Scotts Bluff County, from levying, assessing, collecting, or attempting to collect taxes under authority of such law. Defendant P. Cooper Ellis demurred to the petition because of a misjoinder of several causes of action and a defect of parties defendant. By order of the court the action was dismissed as to defendant P. Cooper Ellis, county treasurer, by reason of a misjoinder of the parties defendant.

Thereafter plaintiff filed an amended petition against all defendants except P. Cooper Ellis, county treasurer of Scotts Bluff County, praying for judgment determining and declaring that L. B. 539 enacted into law by the Sixty-eighth Session of the Nebraska Legislature in 1957, now sections 2-2410 to 2-2427, R. S. Supp., 1957, to be unconstitutional, and restraining said defendants and each of them from collecting any funds paid to the county treasurer of Scotts Bluff County; from disbursing said funds or obligating them in any way; from creating any debts or obligations chargeable to said district which could result in any levy on property for payment thereof; and from entering into any contract or contracts for the expenditure of any funds raised by the 1-mill levy either in the hands of the defendants, or any of them, or in the hands of the county treasurer of Scotts Bluff County.

On the same day the plaintiff filed a petition in the same court against P. Cooper Ellis, county treasurer of Scotts Bluff County, defendant, to enjoin the defendant from disbursing to said district, any of its officers, or any person any of the funds paid into his office by reason of the 1-mill levy, from collecting from the property of the plaintiff and those similarly situated any of the unpaid tax created by the 1-mill levy which had not been paid to him, and to declare the act as above described to be unconstitutional.

The North Platte Valley Weather Control District filed a petition in intervention in the latter case by leave

of court, praying that plaintiff's petition be dismissed.

By stipulation of the parties and order of the court, the two above-mentioned cases were consolidated for the purpose of trial and all purposes thereafter.

The trial court rendered judgment granting the injunctions prayed for by the plaintiff against the defendants. The court also made a finding that sections 2-2410 to 2-2427, R. S. Supp., 1957, known as the Weather Control Act of Nebraska, were unconstitutional and void for the reason, among others, that the act provided for an unwarranted and unlawful delegation of legislative authority to private individuals.

In the case brought by the plaintiff against P. Cooper Ellis, defendant, the court's decree was substantially the same as in the case against the other defendants, except that the defendant district's petition in intervention therein was dismissed, the defendant P. Cooper Ellis, county treasurer, was enjoined from disbursing to the district any of the funds collected for said district, and the court retained jurisdiction of the cause for the purpose of determining distribution of any funds collected and in the hands of P. Cooper Ellis, county treasurer of Scotts Bluff County, or any such funds received by him in the future.

The district, as intervener, filed a motion for new trial which was overruled.

The district and other defendants, except P. Cooper Ellis, county treasurer of Scotts Bluff County, filed a motion for new trial which was overruled.

The district and all defendants named by the plaintiff except P. Cooper Ellis, county treasurer of Scotts Bluff County, perfected appeal to this court.

The plaintiff in his amended petition, insofar as necessary to consider here, alleged the formation of the district under the provisions of the Weather Control Act of Nebraska, sections 2-2410 to 2-2427, R. S. Supp., 1957; that the act attempted to deprive persons of their property without due process of law, attempted to take

property without just compensation, and attempted to delegate to private persons legislative functions; that the act failed to establish any tribunal or court for the determination of the legality of the tax or the inclusion or exclusion of the property subject to taxation; and that the tax levied by the district was for an illegal and unauthorized purpose. Plaintiff prayed for judgment declaring the act unconstitutional and void, and for injunctive relief as previously mentioned.

The plaintiff's petition in the case wherein P. Cooper Ellis, county treasurer of Scotts Bluff County, was made the defendant was substantially the same as in the case of the other defendants, and the prayer was for injunctive relief as heretofore mentioned.

The answer of P. Cooper Ellis to the plaintiff's petition set forth his duties as county treasurer relating to taxes collected from the taxpayers of Scotts Bluff County in the district, and prayed that the plaintiff's petition be denied.

The answer of the district and the other defendants contained a general denial of the allegations of the plaintiff's amended petition; alleged that the district was created in accordance with the act; set forth the business of the district after its inception; and alleged that the district as created was a valid district and a subsisting public corporation of the state authorized and empowered to conduct and transact business as provided for in the act.

The defendant district's petition in intervention alleged substantially the same facts as set forth in the answer of the defendants.

The plaintiff's answer to the petition of intervention of the district was a general denial.

The plaintiff's reply to the defendants' answer to his amended petition was a general denial of the allegations contained therein not admitted.

The defendants' assignments of error deemed necessary to a determination of this appeal are as follows:

(1) The trial court erred in declaring the Weather Control Act of Nebraska, sections 2-2410 to 2-2427, R. S. Supp., 1957, unconstitutional; and (2) the trial court erred in failing to find that section 23, L. B. 633, Sixty-ninth Session of the Nebraska Legislature, legalized and validated all proceedings taken and acts done in the organization and creation of the district.

The facts were stipulated by the parties and show that the district was formed in compliance with the provisions of L. B. 539, enacted by the Sixty-eighth Session of the Legislature of Nebraska, which act, hereinafter called the act, now appears as sections 2-2410 to 2-2427, R. S. Supp., 1957. At all times mentioned Dave Dillman, George Sato, Harry Webber, Evert Thomas, Henry Sands, Benjamin F. Roberts, Jr., Frank E. Berquist, and C. C. Hendrickson were the board of directors of the district. The defendant Jerry Hays submitted his resignation on August 11, 1958, as one of the directors of the district. His resignation was accepted by the board of directors of the district on August 12, 1958, and the vacancy created by said resignation was not filled. Defendant P. Cooper Ellis was at all times involved in this action the duly elected, qualified, and acting county treasurer of Scotts Bluff County. The petition for organization of the district was filed with the Secretary of State of Nebraska on April 4, 1958. On April 8, 1958, the Secretary of State found that the petition contained the required number of signatures and met the requirements of the act, and ordered that the question of the organization of the district be submitted to a vote on May 13, 1958, of the electors living within the proposed district. A copy of the order was delivered to the county clerks of Scotts Bluff, Morrill, Sioux, and Banner Counties. Pursuant to the order of the Secretary of State, notices of the special election and ballots were duly published as provided by law. On May 26, 1958, the Secretary of State, after tabulation of the ballots cast in such election, found the total

voting for organization of the proposed district exceeded 55 percent of those voting in such election, and since in excess of 55 percent of those voting in such election voted in favor of the organization of the proposed district, he determined that the said district was fully organized pursuant to the laws of the State of Nebraska. On June 30, 1958, bonds in the penal sum of $5,000 were filed with and approved by the Secretary of State for each of the defendant directors. On July 1, 1958, an organizational meeting was held by the directors and a president, vice president, secretary, and treasurer were elected. The district certified a 1-mill levy to the county clerks of Scotts Bluff, Morrill, Sioux, and Banner Counties on July 1, 1958. Prior to such certification the board of directors adopted a budget in the amount of·$55,000 for a hail suppression program to be conducted during the summer of 1959, and $5,000 for expenses incident to carrying on the project as provided for by the act. Since July 1, 1958, by and through its board of directors, the district had conducted and was conducting business as authorized by the act by expending funds of the district, and had entered into contracts with the Colorado State University at Fort Collins, Colorado, to conduct research on hail suppression, and with Weather Engineers, Inc., of Loomis, California, whereby said engineers agreed to conduct for the district a hail suppression program in such district for the period from May 10, 1959, to and including September 30, 1959.

We deem it unnecessary to set out other facts as contained in the record.

Section 2-2427, R. S. Supp., 1957, provides that the act may be cited as the Weather Control Act of Nebraska. We hereafter use the term "act."

We set forth only the sections of the statute relating to the act which are necessary in determining this appeal.

Section 2-2411, R. S. Supp., 1957, provides: "Proceedings for the establishment of a weather control dis-

trict may be initiated only by the filing of a petition with the Secretary of State. The petition shall be signed by not less than fifteen resident owners of land in each of a majority of the precincts lying wholly or partly within the proposed district."

Section 2-2412, R. S. Supp., 1957, provides in part: "(1) The petition, referred to in section 2-2411, shall set forth: (a) The proposed name of the district; (b) a description of the territory to be included in the district, together with the proposed boundaries of such district and the divisions thereof for the purpose of election of directors, and a map showing such boundaries; (c) the number and terms of directors that the district shall have if formed, together with the name, address, term of office, and division to be represented of each of the proposed directors, who shall serve until their successors are elected and qualified, designating their terms so that not more than one-third shall terminate every two years; (d) where the offices of such proposed district are to be maintained; and (e) a prayer that the organization of the district be submitted to a vote of the landowners as provided by sections 2-2410 to 2-2417."

Section 2-2413, R. S. Supp., 1957, provides: "The Secretary of State shall examine the petition and, if he finds that it bears the requisite number of signatures and otherwise meets the requirements of sections 2-2410 to 2-2427, he shall order that the question of the organization of such district be submitted to a vote of the electors living within the proposed district. He shall also fix the date of such election, which may be held either as a special election or at any general election. Such election shall be so scheduled that the notice required by section 2-2414 can be given."

Section 2-2414, R. S. Supp., 1957, provides: "The Secretary of State shall give notice of the scheduling of such election to the election commissioners, or county clerks in those counties not having an election commis-

sioner, of each county to be embraced in whole or in part within such district. Such notice shall contain a statement of the question to be submitted at such election, the area in which such election is to be held, and the date thereof."

Section 2-2423, R. S. Supp., 1957, provides: "The board of directors may levy and collect each year the taxes necessary to finance the activities of such district to the amount of not more than one mill on the dollar of the assessed value of all taxable property except intangible property within such district. It shall, on or before the first day of August in each year, certify its mill levy to the county clerks of the counties wholly or partially within the district, who shall extend the same on the county tax list, and the same shall be collected by the county treasurer in the same manner as state and county taxes. It shall be the duty of the board to apply for and to receive from the county treasurers all money to the credit of the district. The county treasurer shall disburse the same on the order of the treasurer of the district."

Section 2-2424, R. S. Supp., 1957, provides: "All claims against weather control districts may be paid by warrants or orders, duly drawn on the treasurer of such district, signed by the president and countersigned by the secretary. When such warrants or orders have been issued and delivered, they may be presented to the treasurer of the district, and if such be the fact, endorsed 'not paid for want of funds.' Such warrants or orders shall be registered by the treasurer in the order of presentation, shall draw interest at the rate of seven per cent per annum from the date of registration thereof, and shall be received by the county treasurer in payment of weather control district taxes levied pursuant to section 2-2423."

Section 2-2426, R. S. Supp., 1957, provides: "If there are no debts outstanding, the board of directors may, on its own motion, or on the written request of twenty-

five electors, request of the Secretary of State that the question of dissolution of such district be submitted to the electors of the district, and the Secretary of State shall fix the date of such election, notice of which shall be given and which shall be conducted in the same manner as elections for the formation of such districts. If a majority of those voting on such question vote in favor of dissolution, the Secretary of State shall so certify to the board of directors, which shall thereupon stand dissolved. The question of dissolution shall not be submitted more often than once every twelve months. In case a district is dissolved the funds on hand or to be collected shall be held by the treasurer, and the directors shall petition the district court of the county in which the main office is located for an order approving the distribution of funds to the taxpayers of the district on the same basis as collected."

In determining the defendants' first assignment of error relating to the constitutionality of the act we consider only one ground which we believe discloses that the act is unconstitutional. The following authorities are applicable.

In determining whether or not any legislation is valid, it is proper to examine and ascertain what may be done or accomplished pursuant to said legislation. See Rowe v. Ray, 120 Neb. 118, 231 N. W. 689, 70 A. L. R. 1056.

In Elliott v. Wille, on rehearing, 112 Neb. 86, 200 N. W. 347, this court had under consideration the constitutionality of an act authorizing the formation of a district for the distribution of electric light, heat, and power. This court said: "If the statutes, when fairly construed, authorize and sanction the taking of private property without just compensation, or deprive persons of their property without due process of law, then such legislation must be held invalid." The court further said: "* * * when a petition praying for the formation of a district for the purpose of distributing light, heat or power by the use of electric current, and for the

election of three directors of such proposed district, setting forth the boundaries of the proposed district, the estimated cost of the distribution system and the method proposed for raising necessary funds, whether by bonds or special tax, and signed by not less than 10 per cent of the freeholders of the proposed district, is filed with the county board, it then becomes the duty of such board to order a special election within the proposed district. At this election all who are electors under the general election laws and reside in the proposed district may vote, and, if a majority of the votes cast at such special election is in favor of the proposed district, it then becomes a district. The district may then, through its officers, proceed to construct a distribution system and to levy taxes or issue bonds to defray the cost of the system. * * * The statutes in question make no provision for a tribunal to determine whether any lands have been unjustly included in or excluded from the district, or whether the organization of a particular distribution district will be for the public convenience or welfare, save and except the action of the petitioners and their self-selected electorate. * * * Where a legislative act permits the organization of districts, for the construction of a public improvement, by private individuals, to be paid for by a tax on all the property in the district, and no provision is made for a hearing by any tribunal as to the right of property owners who may be injuriously affected or wrongfully included within the district, it may result in the taking of private property for a public purpose without just compensation, and in the taking of private property without due process of law." In the light of the above language, the legislation involved in Elliott v. Wille, *supra,* was declared unconstitutional.

The similarity of the sections of the statutes involved in Elliott v. Wille, *supra,* and the case here involved, insofar as the constitutional issues are involved, is noted. There appears to be no significant difference.

Under the act here involved, a person living outside the district but owning property within the proposed boundaries of the district has no voice in the forming of the district. Such owner is not accorded the opportunity to protest the inclusion of his property within the district. Under the act here involved, a landowner has no opportunity to be heard by a competent tribunal on the question of whether the proposed district will benefit the public health, welfare, and convenience, or upon the question of whether his property has been arbitrarily or unjustly included within the boundaries of the district, regardless of whether the landowner lives within or without the boundaries of the district.

It will be observed by reading the sections of the act heretofore set forth that it contains all of the defects found to be involved in the case of Elliott v. Wille, *supra*, that is, that the act authorizes individuals to create and fix boundaries of a district for a public improvement to be paid for by taxation levied upon property within the district, without containing any provision for determination by a competent tribunal of whether the creation of the district and the construction of the public improvement will promote public health, convenience, or welfare, and without any provision for determining whether the owners of property have been arbitrarily and unjustly included within the district, or whether the property will receive any benefit from the proposed district.

As we view the act, it violates Article I, section 3, of the Constitution of Nebraska, which provides: "No person shall be deprived of life, liberty, or property, without due process of law." It also violates Article I, section 21, of the Constitution of Nebraska, which provides: "The property of no person shall be taken or damaged for public use without just compensation therefor."

Another case which we believe decisive of the constitutionality of the act here involved is Nickel v. School

Board of Axtell, 157 Neb. 813, 61 N. W. 2d 566. This was an action to enjoin certain officials, whose duty it was to do so, from assessing and levying a tax against plaintiffs' lands located in school district R-1 for the support thereof. The district had been established under the Reorganization of School Districts Act, Laws 1949, c. 249, p. 673. The constitutionality of the act was involved. The court, quoting from Rowe v. Ray, *supra*, said: " 'It is a rule of general recognition that the formation of municipal corporations, such as counties, cities, villages, school districts, or other subdivisions, and the fixing of the boundaries of such municipal corporations are legislative functions. Among the decisions of this court which recognize this rule are: City of Wahoo v. Dickinson, 23 Neb. 426; State v. Dimond, 44 Neb. 154; City of Hastings v. Hansen, 44 Neb. 704; Bisenius v. City of Randolph, 82 Neb. 520; Winkler v. City of Hastings, 85 Neb. 212; Elliott v. Wille, on rehearing, 112 Neb. 86.' "

The appellants in the case of Nickel v. School Board of Axtell, *supra*, contended the act was unconstitutional because it permitted complete freedom of choice by a county committee in the selection of boundaries of any proposed school district and thus permitted it, by gerrymandering, to discriminate between persons and property. In taking up this phase of the case the court quoted from Elliott v. Wille, *supra*, as follows: " 'The fixing of boundaries of a political subdivision of a state into counties or districts for public purposes is a legislative function. The legislature may authorize the organization of districts for public purposes by other governmental bodies, and the proceeding may be proposed or initiated by private individuals. Where the latter course is pursued, there must be some provision for determining whether the particular district is for the public health, convenience or welfare, and a means by which an aggrieved property owner, whose property is injuriously affected, may have his rights judicially

determined. The legislature may not delegate to private individuals either legislative or judicial functions. Where a legislative act permits the organization of districts, for the construction of a public improvement, by private individuals, to be paid for by a tax on all the property in the district, and no provision is made for a hearing by any tribunal as to the right of property owners who may be injuriously affected or wrongfully included within the district, it may result in the taking of private property for a public purpose without just compensation, and in the taking of private property without due process of law.' "

The defendants contend the trial court erred in failing to find that section 23, L. B. 633, Sixty-ninth Session of the Nebraska Legislature, 1959, legalized and validated all proceedings taken and acts done in the organization and creation of the district.

The Nebraska Legislature in its Sixty-ninth Session enacted L. B. 633, which appears in chapter 9, page 107, Laws 1959, the subject matter being weather control districts. It was titled: "AN ACT relating to weather; to provide for weather control districts; to provide for their organization; to provide the procedures, powers, and duties thereof; to provide for the dissolution thereof; to provide for jurisdiction of the courts as prescribed; to provide that such districts shall have power to tax as prescribed; to make certain acts unlawful; to provide penalties; to provide how this act may be cited; to provide a savings clause for districts organized under a prior law; and to repeal sections 2-2410 * * * (to) 2-2427, Revised Statutes Supplement, 1957." This law was approved June 25, 1959. It is in fact a new law relating to the subject of weather control districts.

Article III, section 27, of the Constitution of Nebraska, provides in part: "No act shall take effect until three calendar months after the adjournment of the session at which it passed, unless in case of emergency, to be expressed in the preamble or body of the act, the

Legislature shall, by a vote of two thirds of all the members * * * otherwise direct."

Neither the preamble nor body of L. B. 633 above described contains an expression of an emergency. Consequently, L. B. 633 did not take effect until 3 calendar months after the adjournment of the Sixty-ninth Session of the Nebraska Legislature, or on September 28, 1959.

The motions for new trial in this case were filed under date of June 11, 1959, and overruled on July 15, 1959. The notice of appeal in this case was given by the defendants on August 14, 1959, and jurisdiction of the case was lodged in this court prior to September 28, 1959, the effective date of L. B. 633 which purports to validate the proceedings taken under the act involved in the instant case.

It is obvious from what has been said above that the trial court did not have an opportunity during the trial of the case here considered to pass upon the validity of L. B. 633. All the proceedings relating to the case here involved had been heard by the trial court and judgment rendered as previously stated. In the light of what has been said above on this phase of the case, the defendants are in no position to raise the validity of L. B. 633 as being a constitutional act passed by the Legislature and curing the defects appearing in the act here considered.

In the case of City of Fremont v. Dodge County, 130 Neb. 856, 266 N. W. 771, we said that a case must be determined on the law as it stands when judgment is rendered therein. See, also, Preisendorf Transp., Inc. v. Herman Bros., Inc., 169 Neb. 693, 100 N. W. 2d 865.

The defendants' contention is without merit.

Other issues raised by the plaintiff as to why the act here involved may be considered unconstitutional need not be determined.

For the reasons herein set forth, the judgment of the trial court is affirmed.

AFFIRMED.